Winchell vs. The City of Waukesha.

WINCHELL, Respondent, vs. THE CITY OF WAUKESHA, Appellant.

110      101
e115     544
s116     255
61 LRA 694n

*March 22 — April 9, 1901.*

*Municipal corporations: Liability for nuisance: Sewer system: Navigable stream: Pollution: Riparian rights: Private injury: Injunction: Implied authority to create or maintain a nuisance: Police power: Remedies: Evidence: Pleading: Inferior courts: Jurisdiction: Judgment: Modification.*

1. Defendant built a sewer system with an outlet into a navigable river about a quarter of a mile above plaintiff's farm, her house being 850 feet from the river. As the volume of sewage increased defile-

ment of the waters became apparent, and an extremely offensive, disagreeble odor therefrom pervaded plaintiff's residence, causing great distress, discomfort, and illness. The waters of the river were thereby rendered unfit for bathing or for watering stock, and were only about double in volume the amount of sewage flowing into it. The volume of the stream was decreasing and that of the sewage increasing. Experts testified that at an expense of about $5,000 the sewage could be purified and rendered innoxious and inoffensive. *Held,* an obvious nuisance, which, if created and maintained by an individual, would entitle plaintiff to the aid of a court of equity to effect its abatement, and to damages if pecuniary injury was established.

2. The injuries to plaintiff, in substantial defilement of the waters, preventing their beneficial use and impairing the use of her land itself, are none the less special and private because by the same acts may be created and maintained a public nuisance in defiling the waters of a navigable stream, or in polluting the atmosphere to the detriment of the public health.

3. A municipal corporation is no more exempt from liability in case it creates a nuisance, either public or private, than an individual.

4. How far there must be a yielding of the private rights of continual purity of such lakes and rivers as are the natural and unavoidable courses and receptacles of drainage, to the necessity of use thereof for the public and general health and convenience, and upon what terms such yielding shall come, are primarily questions of policy for the legislature, within the limits of its power over private rights defined by the constitution.

5. An act of the legislature authorizing a city to construct a sewage system does not give the city, by inference or implication, authority to pollute the waters of a navigable stream and thereby, either from the plan adopted or negligence in management, create a public nuisance to the detriment of the rights of a riparian owner.

6. In an action by a riparian owner to enjoin a city from emptying its sewage into a navigable stream, where there is no issue of negligence either in construction or management of its sewers, the effect of the remedy by injunction upon the defendant is an important consideration in determining whether the court should apply such relief or leave plaintiff to her legal remedies, and, in that respect, evidence that the sewage could be deodorized and rendered innoxious at small expense is admissible.

7. A complaint to restrain a nuisance alleged facts showing fully irreparable injury, and that the same was continuously and constantly recurring, and that any remedy obtainable in a court of law would

Winchell vs. The City of Waukesha.

be inadequate. *Held*, that such complaint warrants equitable re-
lief under sec. 3180, Stats. 1898, even though it fails to allege *in hæc
verba* any of the conditions prescribed by the statute.

8. The jurisdiction, in civil actions, of the county court of Waukesha
county is limited to $25,000. In an action to abate a nuisance it
appeared that the value of plaintiff's land was $10,000; that the
damages claimed were $6,000, and that the nuisance could be abated
by appliances costing about $5,000. *Held*, that there was nothing
in the record, on any theory of the value or amount in controversy,
to support a contention that the jurisdictional limit was tran-
scended.

9. Where the trial court found that until December, 1901, would be a
reasonable time to allow defendant to change its sewer system,
in order to remove any ambiguity in the judgment restraining
the defendant, after December, 1901, from continuing to empty
its sewage into the river in such condition and manner as to create
a nuisance to the plaintiff, it was modified on appeal by adding,
"unless the same shall have first been so deodorized and purified
as not to contain foul, offensive, or noxious matter capable of in-
juring the plaintiff or her property or causing nuisance thereto."

APPEAL from a judgment of the county court of Waukesha
county: M. S. GRISWOLD, Judge. *Modified and affirmed.*

The plaintiff, a married woman having a family, is the
owner of a farm of about 115 acres, south of *Waukesha*,
bounded on the northwest and west by a small, shallow,
and sluggish stream called Fox river, which runs through
the city of *Waukesha*, and is the only natural drainage
course therefrom. On this farm, about 850 feet east of the
river, is the residence of herself and family. About ten
years ago the city of *Waukesha* installed a sewer system,
now aggregating about fourteen miles, the whole of which
empties at one point into said Fox river about a quarter of
a mile north of plaintiff's land. The number of connections
with said sewer system has been continually increasing since
its installation, so that now there are about 550 closets con-
nected therewith, in addition to the sewer of the State In-
dustrial School for Boys. Prior to the construction of the
sewer, the waters of Fox river were reasonably clear, suit-

able for bathing and for the watering of stock. As the volume of sewage increased, defilement of these waters began to be apparent, so that beginning some five or six years before the commencement of the suit they became offensive to the smell, and from them arose an extremely disagreeable odor or stench, which, whenever the wind was westerly, and especially in warm weather and stagnant conditions of atmosphere, pervaded the plaintiff's residence, causing great distress and discomfort, and in some cases illness. The waters were further rendered unfit for bathing or for watering stock. It appeared that the flow of water in the river is only about double the amount of sewage water flowing into it; that shortly below the mouth of the sewer were what are described as pockets, or deep places in the river, into which a large percentage of the sewage solids are accustomed to settle and remain during the process of decomposition. It also appeared that the volume of water flowing through the stream is tending to decrease from year to year, and that the use of the sewerage system is upon the increase. Plaintiff was the owner of the farm at the time the construction of the sewer was commenced, but is not shown to have had any knowledge of the details of that system, or where it was to empty, nor of the probable effect upon the waters of the stream. It was also made to appear that at an expense of some $5,000 there could be installed septic beds or tanks whereby the sewage could be purified and rendered innoxious and inoffensive. The present suit was brought to abate and enjoin the maintenance of this sewer as a nuisance, and to recover damages caused to the plaintiff's premises thereby, it being alleged that they were greatly deteriorated in sale value. The trial court, after finding facts substantially as above recited, and that until December 1, 1901, is a reasonable time to allow the defendant city to change its sewage system and provide for the doing away with the nuisance to the plaintiff, declared

its conclusion of law "that the defendant should be re-
strained from continuing such nuisance, and from further
emptying or depositing its sewage into said Fox river in
such a condition and manner as to create the nuisance to
the plaintiff, and that said injunction take effect December 1,
A. D. 1901," whereupon an interlocutory judgment was
entered restraining the city "from discharging its sewage
through its sewer system into the Fox river at any time
after the 1st day of December, A. D. 1901," and further
directing that the question of plaintiff's damages be deter-
mined by a jury trial at the next regular term of court.
From such interlocutory judgment this appeal is brought.

For the appellant there were briefs by *H. J. Frame*, city
attorney, and *Ryan & Merton*, of counsel, and oral argu-
ment by *E. Merton*. To the point that the city authorities,
when they were doing the work of constructing a sewage
system authorized by subd. 11, sec. 893, R. S. 1878, by the
village organization, and by sec. 925–208, Stats. 1898, by the
city organization, acted in a judicial or *quasi*-judicial capacity
in determining where the sewers shall discharge, and that
when, in the exercise of their discretion, the sewers were
made to discharge into a stream, the city is under no com-
mon-law liability for incidental damages, they cited *Atwood
v. Bangor*, 83 Me. 582; *Merrifield v. Worcester*, 110 Mass. 216;
*Washburn & M. Mfg. Co. v. Worcester*, 116 Mass. 458; *Mc-
Bean v. Fresno*, 31 L. R. A. 794, 796; *Coldwater v. Tucker*,
36 Mich. 474; *Valparaiso v. Hagen*, 48 L. R. A. 707; *Platt
Bros. & Co. v. Waterbury*, 48 L. R. A. 691; *Gray ex rel.
Simons v. Paterson*, 48 L. R. A. 717; *Sayre v. Newark*, 48
L. R. A. 722.

For the respondent there was a brief by *Armin & Waite*,
and oral argument by *C. E. Armin*.

Dodge, J. The findings and evidence disclose a very ob-
vious nuisance, which, if created and maintained by an indi-

vidual, would entitle the plaintiff to the aid of a court of·
equity to effect its abatement, and to damages if pecuniary
injury be established, within the decisions of this court
which are cited and summarized in *Middlestadt v. Wau-
paca S. & P. Co.* 93 Wis. 1, 4. Two entirely well recog-
nized elements of special and private injury are established,.
namely, substantial defilement of the waters of a stream
flowing along and over plaintiff's land so as to prevent the
beneficial use of the water, and so as to injure and impair
the use of the land itself; also for the creation of noisome
and noxious odors interfering with the comfort, convenience,.
and probably the health of plaintiff and her family in the
occupation of her habitation. These injuries to the plaintiff
in the use of her property and to the property itself are
none the less special and private because by the same acts
may be created and maintained a public nuisance in defil-
ing the waters of a navigable stream, or in polluting the
atmosphere to the detriment of the public health. It has·
been declared by this court in *Harper v. Milwaukee,* 30 Wis.
365, 372, that "the general rule of law is that a municipal
corporation has no more right to erect and maintain a
nuisance than a private individual possesses, and an action
may be maintained against such corporation for injuries
occasioned by a nuisance for which it is responsible in any
case in which, under like circumstances, an action could
be maintained against an individual." Again, in *Hughes v.
.Fond du Lac,* 73 Wis. 380, 383, it is said, "A municipal cor-
poration is no more exempt from liability in case it creates·
a nuisance, either public or private, than an individual."
These statements are very broad, and, appellant insists, must
yield to various exceptions and limitations. Certain decis--
ions elsewhere are urged upon our attention, notably, *Penn-
sylvania C. Co. v. Sanderson,* 113 Pa. St. 126, and *Valparaiso
v. Hagen,* 153 Ind. 337; *S. C.* 48 L. R. A. 707. The logic of
the line of decisions illustrated by the latter case may be·

Winchell vs. The City of Waukesha.

summarized as follows: The collection and disposal of sewage is for the public safety. Cities therein are performing a governmental function for the general public, not a merely corporate power. The use of streams for such public purpose is within the right of the state government. No constitutional obstacle exists unless private property is actually taken. Impairment of use of running water or of the atmosphere is mere indirect and consequential damage, and does not amount to a taking of any property. The general authority to municipalities to construct sewer systems is a direct legislative authority to use the natural drainage courses, since in no other manner can the outflow be dismissed. Hence, no liability being expressly imposed, none results from the use of the water courses for such purpose, in absence of negligence. Some of the propositions in this chain of reasoning have received apparent approval in our own decisions. It has been said that garbage and sewage disposal is the performance of a governmental function for the general public (*Kuehn v. Milwaukee*, 92 Wis. 263); also that more limited rules of liability apply in the exercise of such function than of more distinctively municipal or corporate powers (*Kuehn v. Milwaukee, supra; Folk v. Milwaukee*, 108 Wis. 359); that mere consequential injury is not a taking of property within the constitutional prohibition (*Alexander v. Milwaukee*, 16 Wis. 247; *Colclough v. Milwaukee*, 92 Wis. 182, 186); that the state for certain public purposes has absolute dominance over navigable streams, without liability to riparian owners (*Cohn v. Wausau B. Co.* 47 Wis. 314). Some of these questions, as we view the case before us, are not essential to its decision, and are of such vast importance, and the effect of a decision so far reaching, that it ought not to be made until squarely presented and fully argued. We cannot but recognize that, as the density of our population increases, as our citizens engage in new and greater industries, and as the municipal aggregations of population mul-

tiply and expand, the original purity of the streams and water basins cannot be wholly preserved. They are the natural and unavoidable courses and receptacles of drainage, through and into which must flow the refuse of human habitation and industry. How far these changing conditions must bring about a yielding of the private rights of continued purity of those lakes and streams to the necessity of use thereof for the public and general health and convenience, and upon what terms such yielding shall come, are primarily questions of policy for the legislature, within the limits of its power over private rights defined by the constitution. When, if ever, the legislature shall enact that streams generally or any streams shall be used as sewers without liability to the owners of the soil through which they run, the question of constitutional protection to private rights may be forced upon the courts for decision. Until such enactment is made, however, in clear and unambiguous terms, we shall be slow to hold by inference or implication that it has been made at all. The right of the riparian owner to the natural flow of water substantially unimpaired in volume and purity is one of great value, and which the law nowhere has more persistently recognized and jealously protected than in Wisconsin. Not alone the strictly private right, but important public interests, would be seriously jeopardized by promiscuous pollution of our streams and lakes. Considerations of æsthetic attractiveness, industrial utility, and public health and comfort are involved. Amid this conflict of important rights, we cannot believe that the legislature concealed, in words merely authorizing municipalities to raise and expend money for the construction of sewers, a declaration of policy that each municipality might, in its discretion, without liability to individuals, take practical possession of the nearest stream as a vehicle for the transportation of its sewage in crude and deletrious condition. At that stage in its logic we cannot

agree with the Indiana court. in *Valparaiso v. Hagen,* 153 Ind. 337. The authority granted to municipalities is to construct sewers, but subject to the general legal restrictions resting upon such corporations forbidding invasion of private rights by creation of nuisance or otherwise. This view of the legislative purpose is enforced by the consideration that, although liquid sewage must flow off along the general drainage courses of the vicinity, it is by no means physically necessary that it should carry with it the solids in an offensive or unhygienic condition. *Hackstack v. Keshena I. Co.* 66 Wis. 439. It is a matter of common knowledge, and of proof in this case, that there are practicable methods for the decomposition and practical destruction of such solids before delivering them into open watercourses; the most modern method, as explained in the evidence here, being treatment in septic bacteria tanks, whereby the decomposition and resolution into inoffensive and innocuous fluids, gases, and mineral solids is greatly expedited. This method, it appears, could be installed at *Waukesha* at a cost approximating $5,000. It is not probable that the legislature has wittingly authorized the defilement, and almost destruction, of our streams, to enable such trifling measure of economy to municipalities. The great weight of authority, American and English, supports the view that legislative authority to install a sewer system carries no implication of authority to create or maintain a nuisance, and that it matters not whether such nuisance results from negligence or from the plan adopted. If such nuisance be created, the same remedies may be invoked as if the perpetrator were an individual. The following are selected from an almost unlimited array of decisions: *Jacksonville v. Lambert,* 62 Ill. 519; *Jacksonville v. Doan,* 145 Ill. 23, 29; *O'Brien v. St. Paul,* 18 Minn. 176; *Clark v. Peckham,* 9 R. I. 455; *Good v. Altoona,* 162 Pa. St. 493; *Owens v. Lancaster,* 182 Pa. St. 257; *Haskell v. New Bedford,* 108 Mass. 208; *Morse v. Worcester,*

139 Mass. 389; *Morgan v. Danbury*, 67 Conn. 484; *Platt Bros. & Co. v. Waterbury*, 72 Conn. 531; *Chapman v. Rochester*, 110 N. Y. 273; *Missouri v. Illinois*, 180 U. S. 208; *Carmichael v. Texarkana*, 94 Fed. Rep. 561.

From what has already been said our conclusion is obvious that the creation and maintenance of a nuisance by the defendant city, causing special and private damage to the plaintiff, fully appears from the finding and evidence, and that plaintiff is entitled to the same remedies as if the defendant were a private individual. One of the forms of relief authorized by sec. 3180, Stats. 1898, is accorded by the judgment appealed from, and, subject to modification to be hereafter suggested, was entirely proper under the circumstances.

Defendant assigns error upon the admission of certain evidence tending to show that its sewer system might practicably be equipped with septic tanks, or other apparatus to deodorize and render innocuous the outflow, construing this as tending to charge negligence upon the city. The rule is, of course, familiar that in an action tried without a jury the admission of improper evidence alone would not work reversal, but we do not deem this evidence improper. While there was no issue of negligence either in construction or management of the sewer, the prayer for an injunction was addressed to a court of equity, and the effect of such remedy upon the defendant was an important consideration in guiding the court to a decision whether it ought to apply the drastic process of injunction, or ought to leave the plaintiff to her other remedies. It was extremely material to that consideration to ascertain whether such injunction would utterly destroy the entire sewer system of *Waukesha*, and subject its citizens to serious inconvenience, and peril of disease. The fact that the system as now existing could still be used by adding appliances involving no very great expense justifies relief by injunction, and in that respect the evidence was admissible.

It is contended that the complaint warrants no relief in equity, because it fails to allege *in hæc verba* any of the several conditions of equitable relief prescribed by sec. 3180, Stats. 1898. The complaint does, however, allege facts showing fully irreparable injury, and that the same is continuously and constantly recurring, and that any remedy obtainable in a court of law would be inadequate. This must suffice without stating either of these conclusions from the specific facts so alleged.

An objection is raised to the jurisdiction of the county court of Waukesha county for that such court is limited to cases in which "the value or amount in controversy or the amount claimed or sought to be recovered after deducting all payments and setoffs shall not exceed $25,000." We find nothing in this record to support the view that such limit is transcended. The plaintiff's property, which the action is brought to protect, is of value only about $10,000. The damages claimed are but $6,000. If, as appellant contends, we consider the effect upon defendant, we find uncontradicted evidence that the nuisance complained of can be abated by appliances costing only about $5,000. Thus, on any theory of the value or amount in controversy, it is less than $25,000, and we need not consider the several constructions possible to the statute.

While the unlimited form of injunction embodied in the judgment is not discussed as an independent ground of error, yet it is before us upon this appeal, and we do not feel justified in approving the judgment without such qualification as will make obvious the meaning which we are persuaded the trial court intended to express. The judgment restrains defendant "from discharging its sewage through its sewer system into the Fox river at any time after December 1, 1901." Similar language received consideration in *Morgan v. Danbury*, 67 Conn. 484, and was sustained on the ground that the word "sewage" would be understood to refer only

to "the refuse and foul matter, solid or liquid," carried through the sewer by the water therein flowing. In that case, as here, it was contended that some disinfecting apparatus would effectively purify the water. In the case at bar the findings make apparent the views of the trial court that some such addition to defendant's present system could be made practically effective to prevent the damage of which plaintiff complained, and that he had such appliance in mind in his finding "that until December 1, 1901, is a reasonable time to allow said defendant city to change its sewage system, and provide for the doing away with the nuisance to plaintiff." The same idea evidently persisted in the conclusion of law and order for judgment, for it is there declared that defendant "should be restrained from *continuing such nuisance*, and from further emptying or depositing its sewage into said Fox river *in such condition and manner as to create the nuisance to the plaintiff*." We have no doubt the judgment was intended to express the same thing, and only upon that construction do we approve of it. To the end, however, that any ambiguity may be removed, we deem it best to modify the judgment as below.

*By the Court.*— The judgment of the county court is modified by adding to the second paragraph the following words, to wit: "Unless the same shall have first been so deodorized and purified as not to contain foul, offensive, or noxious matter capable of injuring the plaintiff or her property or causing nuisance thereto," and, as so modified, the same is affirmed.