THOMAS P. FOX, Director of Legislative Services
You have asked my opinion as to:
". . . the remedies presently available to persons who own property on or use the lakes of this state and who seek to recover damages from polluters, both private and public, for the reduced property values, increased health hazards, reduced water quality and generally impaired use of the lakes of this state resulting from water pollution."
It is crucial to this analysis to define clearly which of the two classes of potential plaintiffs (those who live on the water and those who merely use the water) is being discussed, since, as will be seen, the cause of action possessed by riparians is not held by most of those persons who are frustrated by the pollution of a frequented body of water but who do not own land on or near that water.
Representative of the liberality with which the courts of Wisconsin have approached suits brought by riparian owners is the statement appearing in Middlestadt v. Waupaca Starch and PotatoCo. (1896), 93 Wis. 1, 4, 66 N.W. 713, 714, where the plaintiff riparian was complaining of starch factory refuses being thrown into the Waupaca River upstream from his property and interfering with his use and enjoyment of the river:
". . . It is too well settled to need discussion at this time that a riparian owner of property is entitled to have the water of a stream flow to and through or by his land in its natural purity, and that anything done which so pollutes such water as to impair its value for the purposes for which it is ordinarily used by persons so circumstanced, . . . may be restrained at the suit of the injured party. . . ."
The Wisconsin Supreme Court has repeatedly couched the riparian owner's cause of action not in terms of a riparian right per se
but in terms of a nuisance action in which the riparian has a particular interest. This merger of concepts is seen in the following language in the Middlestadt case: *Page 103 
"Wood, Nuisances, sec. 1, states the rule thus: `Every unlawful use by a person of his own property in such a way as to cause an injury to the property or rights of another, and producing material annoyance, inconvenience, discomfort, or hurt, and every enjoyment by one of his own property which violates the rights of another in an essential degree, constitutes an actionable nuisance, and damages are presumed.'"
A similar approach had been taken earlier, in Hazeltine,Administrator, v. Case (1879), 46 Wis. 391, 1 N.W. 66, in which a lower riparian sued an upper riparian for keeping a large number of hogs near the waterway and thus rendering unfit for "culinary and domestic" purposes the stream as it passed plaintiff's residence. The court said at 46 Wis. 394, 1 N.W. 66, that "The learned circuit court stated to the jury certain principles of law applicable to the use of water in running streams, a violation of which would cause a nuisance . . ." and that the appellate court did not "see that the defendant has any valid ground of objection . . ." to those instructions.
The nuisance* alleged can be called either public or private both are viable causes of action so long as the injury to the plaintiff is "peculiar." This is because the Wisconsin statutes provide in sec. 280.01:
Within the larger definition is the category of private nuisance, which was defined by the Wisconsin Supreme Court in Abdella v.Smith (1967), 34 Wis.2d 393, 398, 149 N.W.2d 537, 539 as
"(A)n unreasonable interference with interests of an individual in the use or enjoyment of land . . . The interference cannot be merely trivial. It `must create more than an inconvenience, and must be offensive to the person or ordinary and normal sensibilities.'" *Page 104 
"Any person may maintain an action to recover damages for and to abate a private nuisance or any person, county, city, village or town may maintain an action to recover damages or to abate a public nuisance from which injuries peculiar to the complainant are suffered, so far as necessary to protect the complainant's rights and to obtain an injunction to prevent the same."
Moreover, a nuisance may be both public and private, and most of the situations giving rise to a cause of action by a riparian for pollution of the body of water on which he is situated no doubt will constitute both a private and public nuisance. For example, in Winchell v. City of Waukesha (1901), 110 Wis. 101,85 N.W. 668, the defendant city built a sewage system which emptied into a stream a quarter mile above plaintiff's land, which abutted on the stream. The stream became unfit for bathing or for watering stock and the odor emanating from the stream, under certain conditions ". . . pervaded the plaintiffs residence, causing great distress and discomfort, and in some cases illness." The plaintiff sued to enjoin the nuisance and to recover damages for the lessened value of the real estate, and prevailed on both points. The Supreme Court affirmed, saying:
". . . Two entirely well recognized elements of special and private injury are established, namely, substantial defilement of the waters of a stream flowing along and over plaintiff's land so as to prevent the beneficial use of the water, and so as to injure and impair the use of the land itself; also for the creation of noisome and noxious odors interfering with the comfort, convenience, and probably the health of plaintiff and her family in the occupation of her habitation. These injuries to the plaintiff in the use of her property and to the property itself are none the less special and private because by the same acts may be created and maintained a public nuisance in defiling the waters of a navigable stream, or in polluting the atmosphere to the detriment of the public health. . . ." 110 Wis. 101 at p. 106.
See also, Costas v. Fond du Lac (1964), 24 Wis.2d 409, 413,129 N.W.2d 217, 220.
Other cases affirming the concept of a private recovery for pollution of a waterway have involved a municipality's discharge from its sewage disposal plant into a stream running past *Page 105 
plaintiff's property (Mitchell Realty Co. v. West Allis (1924),184 Wis. 352, 199 N.W. 390); the construction of a roadway from the shore of a lake to an island so as to cause the water near the plaintiffs lake frontage to become stagnant, causing growth of weeds and emission of offensive odors (Breese v. Wagner
(1925), 187 Wis. 109, 203 N.W. 764); the reduction in value of a home due to the discharge of creamery wastes into a common waterway (Behnisch v. Cedarburg Dairy Co. (1923), 180 Wis. 34,192 N.W. 764); the operation of a brewery in such a fashion as to foul the waters in the area (Meiners v. The Frederick MillerBrewing Co. (1890), 78 Wis. 364, 47 N.W. 430); and the maintenance of a distillery and animal pens above stream from plaintiff's home and tavern (Greene v. Nunnemacher (1874),36 Wis. 50).
While riparian owners are well protected by Wisconsin nuisance law, and while, presumably, the same protection would flow to lessees or easement holders of riparian land, to the extent of their interests, (see Prosser, Law of Torts, 4th Ed., P. 593) it is my opinion that mere users of a body of water may not recover damages for the pollution of that water.
The case of Kuehn v. City of Milwaukee (1892), 83 Wis. 583,53 N.W. 912, presents the obstacle which most fishermen whose favorite lake is polluted, or canoeists whose favorite river is being destroyed by factory wastes, as examples, would face in attempting to prosecute an action for damages. In that case a commercial fisherman brought an action sounding in public nuisance against the city of Milwaukee, which dumped garbage in Lake Michigan so close to the plaintiffs nets that by the wind and wave action the garbage was driven into the nets, killing fish and damaging the nets themselves. Apparently, the city employed this method of garbage disposal as a temporary expedient, and after this incident used a procedure more compatible with the plaintiffs fishing. The plaintiff moved for a temporary injunction, but the trial judge denied the same, with reasons that, in the Supreme Court's words, ". . . are so clearly and accurately stated . . . that but little need be added." The trial judge ruled at 83 Wis. 585, 586, 53 N.W. 912, 913:
". . . (H)as the plaintiff shown himself entitled to have this nuisance abated at his instance? It is not necessary to go beyond this state for instruction upon this point. Our own supreme court *Page 106 
have settled the law as to the cases in which a private citizen may sue to restrain a public nuisance, and in which he may not, with as much certainty as any court in the country. The plaintiff in such case must show not only that he is affected by the public nuisance, in common with the other citizens of the state or of the neighborhood. He must show, beyond that, that he is affected in some way different from other citizens, and the difference must be a difference in kind, and not a difference in degree; that is to say, his injury must differ from the injury generally suffered, not only as to the amount of injury, but as to the kind of injury, suffered. The plaintiff in this case shows that he is one of a large number of fishermen affected by this alleged nuisance, and it is abundantly clear that he has no special privilege or right to fish in Lake Michigan; that every other man who is so disposed may become a fisherman in the same lake, and in the same parts of the lake, where he plies his vocation. Furthermore, he shows that a very considerable number of men are so engaged. In what respect does his injury differ from that of the general public? He has no special interest, which others have not, affected by this nuisance. He has no property, which others have not, damaged by this nuisance. He sets up no riparian rights as an owner of a portion of the shore; and, in short, he shows no special injury to himself or to his business which is not common to all the fishermen engaged in fishing along the west shore of Lake Michigan and in the neighborhood of the city ofMilwaukee . . . (P)eople affected by the pollution of the waters of the river can none of them bring a suit of this nature, unless it be one whose land or whose permanent business is located along the bank of the river, and is thus injured in a manner not common to the whole public."
There is always some doubt associated with a legal extrapolation based upon a single decision, especially when that decision was decided before the onrush of contemporary pressures in the anti-pollution effort. Yet it does appear that a member of the public who uses a Wisconsin body of water but does not own property on or near water (or, presumably, possess a legally recognized interest less than a fee estate in such land) does not have a right to bring an action for private nuisance or for private remedies resulting from a public nuisance. In effect, the privilege of maintaining such an action "runs with the land" on or in proximity of the water. *Page 107 
You have asked whether damages can be recovered from polluters for "reduced property values; increased health hazards, reduced water quality and generally impaired use of the lakes of this state. . . ." Damages certainly can be recovered for the aspects of injury you have mentioned, although most likely the recovery will be in the name of reduced property values. This is logical, for, if a waterway has become unhealthful, odorous, or just unpleasant to look at, the value of the adjoining land will drop accordingly. In Breese v. Wagner, supra, for example, the water along plaintiff's lakefront became stagnant, odorous, and, according to the court, unhealthy. The court synthesized these injuries into a decrease in a property value, including a loss in rental value. However, it is not essential to characterize the damages as a decrease in property value. As Professor Prosser states, with reference to a private nuisance action:
"As in the case of any other tort, the plaintiff may recover his damages in an action at law. In such an action the principal elements of damages are the value attached to the use or enjoyment of which he has been deprived, or — which often amounts to a measure of the same thing — the loss of the rental or use value of the property for the duration of a temporary nuisance, or the permanent diminution in value from a permanent nuisance, or specific losses such as crops, or the income from an established business; and in addition the value of any personal discomfort or inconvenience which the plaintiff has suffered, or of any injury to health or other personal in jury sustained by the plaintiff, or by members of his family so far as they affect his own enjoyment of the premises, as well as any reasonable expenses which he has incurred on account of the nuisance.*
RWW:JAR
* An often-used definition of a nuisance appears in 66 C.J.S.Nuisances, sec. 1, P. 727:
". . . the unreasonable, unwarrantable, or unlawful use by a person of his own property, real or personal, or [the] improper, indecent, or unlawful personal conduct, working an obstruction or injury to a right of another or of the public, and producing material annoyance, inconvenience, discomfort or hurt."
* Prosser, supra, at 602, 603. See, generally. Note, "Stream Pollution — Recovery of Damages," 50 Iowa L. Rev. 141 (1964). *Page 108