BRIGGSON and wife, Respondents, vs. CITY OF VIROQUA, Appellant.

*April 1—May 5, 1953.*

For the appellant there were briefs by *Wayne B. Schlintz* of Viroqua, and *Quincy H. Hale* of La Crosse, and oral argument by *Mr. Hale*.

For the respondents there was a brief by *Bennett & Bennett* of Viroqua, and *Victor H. Breitenfield* of Sparta, and oral argument by *J. Henry Bennett* and *Olga Bennett*.

CURRIE, J.   The plaintiffs are the owners of a 110-acre farm located approximately one mile to the northwest of the sewage-disposal plant of the city of Viroqua. They acquired this farm by purchase in 1936 but have never lived on the farm themselves as they have resided in the city of St. Louis, Missouri, and have rented the farm to tenants.

The city of Viroqua is the county seat of Vernon county and has a population of approximately 3,500. In the early 1920's it constructed two sewage-disposal plants, one at the southeast corner of the city, and another at the northwest corner of the city. Some years later the smaller plant at the southeast corner of the city was abandoned and all sewage was sent through the plant at the northwest corner of the city, a pumping station being employed to lift the sewage from the south side of the city so that it could be transported to the plant at the northwest corner of the city.

A new enlarged disposal plant was erected at the site of the former plant at the northwest corner of the city in either 1936 or 1939 (the evidence is in dispute as to which is the correct date). Up until 1940 the effluent was deposited in a dry well but the use of this dry well was discontinued on recommendation of the state board of health. Thereafter the effluent was discharged into the open area adjacent to the plant. At first the effluent was absorbed in the near-by ground, but as the volume of the effluent increased it gradually extended itself down the valley toward plaintiffs' farm. By about 1941 or 1942 it reached plaintiffs' farm and thereafter gradually extended across the farm and flowed into Springville creek which is beyond the plaintiffs' farm.

There is somewhat of a natural valley which follows all the way down to Springville creek from the disposal plant. From time to time the flow of water down this valley as a result of the rain and melting snow is rather substantial, but the testimony shows that these temporary flowages of large quantities of water did not cause any permanent damage to plaintiffs' land prior to the time that the flowage of effluent established a permanent stream. Before the flowage of effluent across plaintiffs' premises the water from the melting snow and spring rains would entirely disappear and the bottom of the valley across the farm would be covered by grass and a normal situation would return. There were a few small eroded holes but there was no well-defined ditch across the farm prior to 1941.

As a result of the flowage of effluent establishing a permanent stream along the bottom of the valley across plaintiffs' land a condition was created whereby water from melting snow, spring rains, and flash storms did create damage through erosion which had not previously occurred when the bottom of the valley was normally dry and covered with grass.

The sewage-disposal plant is equipped with a by-pass valve and when such valve is opened raw sewage is precipitated

down the valley and across plaintiffs' property. The plant was not so constructed with sufficient capacity to handle the storm water of the city of Viroqua which enters the city's sewer system. In case of heavy rains the by-pass valve was then opened so as not to overload the capacity of the plant itself, with the result that raw sewage was permitted to flow directly down the valley. It was only natural that a terrible stench arose as a result thereof and continued for a long time after the by-pass valve had again been closed, because of the precipitation of the solid matter along the sides of the ditch created by the effluent. At times the odors were so bad in the summertime that the tenants were obliged to keep the doors and windows closed of the dwelling house located upon plaintiffs' land. Cows of the tenants pastured in the area had to be cleaned with disinfectant before they could be milked. The well on plaintiffs' farm was contaminated and its use for drinking purposes permanently destroyed so that the tenants were obliged to haul all of their drinking water from outside sources.

In 1946 further improvements to the plant were made by the city. The testimony is that the effluent from such new improved plant is colorless and practically odorless, and there has been less by-passing of raw sewage since said time. In fact, at the conclusion of the trial below, counsel for the city submitted proposed findings of fact containing the following finding: "That there have been no obnoxious odors from the operation of said sewage-disposal plant or its effluent since the 1st of January, 1950;" and there was testimony in the record which tends to support such proposed finding.

The plaintiffs have repeatedly protested to the city of Viroqua against the conditions resulting from the flow of the effluent and raw sewage which were damaging their lands, and the city made repeated promises to remedy the situation. There is no claim made of any acquiescence or waiver on the part of the plaintiffs.

The appellant city raises the following issues upon this appeal:

(1) That the plaintiffs' only remedy in so far as recovering damages is concerned is that of proceeding under the eminent-domain statutes; and

(2) That the damages awarded were excessive.

The plaintiffs, by their motion for review, question that part of the judgment which denied the injunction which they sought, and contend that such refusal to grant an injunction was error.

Counsel for the city contend that the precipitation of the flow of the effluent from the city's sewage-disposal plant over and across the lands of plaintiffs in a constant stream constituted the taking of an interest in such land under ch. 32, Stats., relating to eminent domain. Reliance is placed upon that portion of sec. 32.04, Stats., providing as follows:

"If any owner of property desires to institute condemnation proceedings, he shall present his verified petition therefor to the county or circuit judge of the county where the land is situated. Such petition shall describe the land, state the board, commission, or corporation against which the condemnation proceedings are instituted, and use to which it has been put or is designed to have been put by the board, commission, or corporation against which the proceedings are instituted."

Many cases are cited by counsel in which it has been held by this court that eminent domain is the exclusive remedy of a property owner whose land has been taken by a public utility or railroad corporation possessing the power of eminent domain under ch. 32, Stats. It is significant, however, that counsel has cited no Wisconsin case holding that a court in an equity action instituted by a property owner against a municipality to abate a private nuisance cannot award damages, either as an incident to the granting of an injunction, or in lieu thereof.

18 McQuillin, Mun. Corp. (3d ed.), pp. 507, 509, sec. 53.129, states the general rule with respect to the rights of property owners, such as plaintiffs, who are damaged as a result of flow of sewage across their property, as follows:

"A municipality is answerable in damages if it discharges the outflow of a sewer, or a system of sewerage upon the property of another, and this upon the ground that such discharge constitutes a private nuisance for which action may be maintained by the person injured. . . .

"A municipality has no more right to create a nuisance to the injury of another than has an individual, and hence where a sewer outlet is a private nuisance damages are recoverable. Thus, a municipality will be liable where a sewer is maintained by a municipal corporation so as to discharge sewage and filth upon private property, or to emit offensive odors creating an unsanitary and dangerous condition interfering with the safe and comfortable enjoyment of such property so as to impair its value."

The Kansas court in *King v. Kansas City* (1897), 58 Kan. 334, 338, 49 Pac. 88, declared that a municipality cannot collect "sewage and filth and precipitate it upon the property of a citizen, even if the plan is devised in good faith and the best material is used in the construction. It is immaterial from which end of the sewer the discharge is made; the consequence and liability are necessarily the same."

This court in *Winchell v. Waukesha* (1901), 110 Wis. 101, 109, 85 N. W. 668, declared:

"The great weight of authority, American and English, supports the view that legislative authority to install a sewer system carries no implication of authority to create or maintain a nuisance, and that it matters not whether such nuisance results from negligence or from the plan adopted. If such nuisance be created, the same remedies may be invoked as if the perpetrator were an individual."

In *Mitchell Realty Co. v. West Allis* (1924), 184 Wis. 352, 199 N. W. 390, plaintiff property owner instituted an

action against the defendant city for the purpose of abating an alleged nuisance and for the recovery of damages. The alleged nuisance consisted of the city discharging the effluent of its sewage-disposal plant containing large amounts of semi-digested sewage into a creek which flowed through plaintiff's lands, and because of the amount of effluent and water discharged by the city in such creek the creek overflowed its banks, doing further damage to plaintiff's lands. This court in its decision stated (p. 370):

"The principal relief prayed for in the instant case is equitable, and the damages are a mere incident to the equitable relief. Under the doctrine well established by this court, if a court of equity takes jurisdiction of a matter it will retain jurisdiction for the purpose of doing complete justice between the parties, and will, in a proper case, not only extend its equitable remedy but will also permit the recovery of damages."

Counsel for the appellant city cite four Wisconsin cases in which the alleged taking was by public authorities, as contrasted with a taking by a public utility or railroad corporation, in support of their contention that eminent domain is plaintiffs' exclusive remedy. These cases are: *Hasslinger v. Hartland* (1940), 234 Wis. 201, 290 N. W. 647; *Muscoda Bridge Co. v. Worden-Allen Co.* (1928), 196 Wis. 76, 219 N. W. 428; *Smeaton v. Martin* (1883), 57 Wis. 364, 15 N. W. 403; and *Smith v. Gould* (1884), 59 Wis. 631, 18 N. W. 457.

The case of *Hasslinger v. Hartland, supra,* involved an equity action to abate a nuisance and for damages instituted by property owners living in the vicinity of the defendant village's sewage-disposal plant who were discommoded by disagreeable and noisome odors. In passing upon the defendant village's contention that plaintiffs should have resorted to eminent domain, Mr. Justice WICKHEM, in the opinion in that case, stated (p. 206):

"This contention is without merit. Assuming an actionable nuisance by the creation of odors which make occupation of plaintiffs' farm inconvenient or distasteful and impair its value, it cannot be said that defendant has dispossessed plaintiffs or taken their property. There was no such taking in this case as would invoke the provisions of ch. 32."

The fact, that the court in its opinion in the *Hasslinger Case* advanced only one ground for holding that eminent domain was not the exclusive remedy of the plaintiffs in that case, is not authority for the proposition that there might not be other existing reasons which would have supported the same conclusion. It is well known that a court having found one sound reason for disposing of a contention made on appeal often does not look for other or additional grounds in support of the conclusion reached.

The question of the right of the plaintiff to recover damages was not involved in the case of *Muscoda Bridge Co. v. Worden-Allen Co., supra,* the relief sought by the plaintiff being that of enjoining the defendant contractors from trespassing on plaintiff's property, the prayer of the complaint in the printed case disclosing that no damages were prayed for. Defendants defended on the ground that the highway authorities had designated a portion of plaintiff's premises as part of a state trunk highway; that the defendants had entered upon such premises pursuant to contracts with such authorities calling for the erection of a new bridge across the Wisconsin river; and that such authorities had commenced eminent-domain proceedings to acquire plaintiff's premises. This court in its decision held that there had been no taking by such authorities because the eminent-domain proceedings had not proceeded to the point where a town order for payment of the award had been tendered to the plaintiff. An injunction was denied on the ground that the comparative harm which would result from granting the injunction would be much greater than that which would

occur if the injunction were denied, and the opinion concluded with a statement that it would be assumed that the eminent-domain proceedings would be carried through to a speedy close.

In *Smeaton v. Martin, supra,* the court had before it an entry by a highway overseer upon plaintiffs' lands adjoining a public highway to construct a drain, as authorized by statutes somewhat similar in import to secs. 81.06 and 81.07 of our present statutes. These statutes authorized any property owner who should feel himself aggrieved thereby to apply to the supervisors of the town who would then appoint three disinterested electors to impartially determine the landowner's damages, and the town was made liable for the payment of the same. The plaintiffs sought an injunction to restrain the construction of the drain upon their lands until plaintiffs had been paid their damages. The court held that plaintiffs were not entitled to the injunction and that (p. 376), "if the plaintiffs have sustained any damages by reason of the drain in question, their remedy is to be sought in the manner prescribed" by such statute. The gist of the decision was that a statute authorizing a municipality to take property, and providing that payment for the taking was to be made later upon the property owner instituting the action therefor prescribed by the statute, was constitutional.

The same statutes were before the court in *Smith v. Gould, supra,* as in *Smeaton v. Martin, supra.* The town, in *Smith v. Gould,* had employed a contractor to divert the waters of a nonnavigable stream from a public highway and plaintiff claimed his land was damaged by such diverted waters and commenced a tort action for damages. The court held that if in fact plaintiff's land had been taken his exclusive remedy was to proceed under the statutes for the determination of his damages and that the action in tort could not be maintained.

Neither *Smeaton v. Martin, supra,* nor *Smith v. Gould, supra,* involved actions in equity to enjoin a nuisance in which

damages were sought as an incident to the equitable relief demanded.

The operation of the sewage-disposal plant of the defendant city of Viroqua would seem to be vested in the board of public works of the city under the provisions of secs. 62.14 (6) and 62.18, Stats. Therefore, if there has been a taking of plaintiffs' lands as a result of the precipitation of sewage from the operation of the plant, such board of public works would seem to be the board which is responsible for it. However, sec. 32.02 (1) provides that before eminent domain can be instituted for such taking by a city board or commission "approval thereof shall have been granted by the governing body." This would appear to be an additional reason why the plaintiffs in the instant case should not be compelled to resort to eminent-domain proceedings in order to recover for damages as they would be powerless to compel the mayor and common council of the city of Viroqua to adopt a resolution authorizing the taking of any interest in plaintiffs' lands.

It is our considered conclusion that the court had the power in the instant case to award damages as an incident to the pending action in equity to abate a private nuisance against a municipal corporation, and in lieu of granting injunctive relief.

We now reach the second contention of the appellant city, that the damages were excessive. In this connection appellant's counsel contend that not only was the amount awarded to the plaintiffs excessive from the standpoint of damage caused by the city, but the amount awarded included damages arising from other causes besides the operation of the city's sewage-disposal plant, viz., (1) storm waters causing erosion, and (2) water and waste matter from a creamery operated in the city.

A careful reading of the learned trial judge's memorandum opinion discloses that no damages were awarded for any injury due to rain or flood waters from storms, except that

the damages do cover the ditch which has been worn across plaintiffs' entire farm from east to west, such ditch now being several feet deep and having a width in places of as much as 25 feet. The water from storms and melting snow may have contributed to the widening and deepening of the ditch originally created by the flowing of the effluent from the sewage-disposal plant, but, as previously mentioned herein, prior to the flowage of any effluent and sewage across plaintiffs' land there was no ditch present, and after the waters receded grass grew where the ditch now is. We believe that the trial court was right in holding the city liable for all damages due to the presence of the ditch inasmuch as without the precipitation of the flowage of sewage across plaintiffs' property creating a running ditch where only dry grassed-over land existed, it is unlikely that the storm waters would have caused any material damage.

The large plant of the Viroqua Co-operative Creamery Company is located to the east and above the city's sewage-disposal plant. Solid waste matter from the creamery first goes into a tank on the creamery premises for treatment and the effluent from that is conducted through the city's sewage-disposal plant. However, large quantities of water are used by the creamery in its condensing operations, such water being artesian well water. The city dug a ditch both east and west from its sewage-disposal plant but such ditching operations did not extend to plaintiffs' land. The large quantity of water discharged from the creamery was carried through this ditch on past the sewage-disposal plant. It is into this ditch that the effluent from the sewage-disposal plant also passes. Inasmuch as the city is responsible for having channeled such water from the creamery through such ditch we fail to see how the city can escape responsibility for any damage such water may have caused to plaintiffs' property. The situation would seem to be no different than if the city had constructed a covered drain or sewer pipe to the creamery

and had conducted the water through it so as to precipitate it across plaintiffs' premises.

The trial court awarded the plaintiffs $5,000 damages, basing the same largely upon the testimony of one Isaac Lavold, who is both a farmer and licensed real-estate broker, who testified that the value of the farm without the ditch and the flowing of effluent and water through it was $12,000, and that it is now worth $7,000, resulting in a net damage of $5,000. Other witnesses for the plaintiffs placed the damages even higher, while witnesses for the defendant city placed the damages very much lower. The court, in addition to having the benefit of such testimony as to damages, also made a personal view of the premises. Testimony was undisputed that it would cost $1,200 to dig a new well to replace the one which had been ruined as a result of being contaminated by raw sewage from defendant's disposal plant, and this element of damages was included in the $5,000 damages awarded. The finding of the trial court as to the amount of damage is not against the great weight and clear preponderance of the evidence and must be sustained.

The last issue to be considered is that raised by the respondent plaintiffs, that it was error for the trial court to deny an injunction. The trial court advanced two reasons for such refusal to grant an injunction.

The first reason was that inasmuch as the damages awarded had been based on the difference in value of the farm before and after the presence of the ditch across it, the granting of an injunction would in effect be the granting of two remedies for the same injury. This is because the damages awarded by the trial court covered and contemplated the continuance of the discharge of effluent through the ditch which had been worn across plaintiffs' farm.

The second reason advanced for denying the injunction was that based on the theory of comparative harm which would result in granting an injunction as compared with

that which would occur by its refusal. The trial court in its memorandum decision on this point stated:

"The plaintiffs are being compensated for their actual damages and loss in value to their farm. There cannot be imposed upon the city of Viroqua, in addition to payment of actual damages, the tremendous inconvenience and expense involved in closing up their sewage-disposal plant or in the alternative requiring the city to dispose of the effluent through tiling from the disposal plant to the Springville creek below plaintiffs' farm, which would cost a tremendous sum across plaintiffs' farm alone."

28 Am. Jur., Injunctions, p. 251, sec. 54, states the rule with respect to the right of a court to balance equities and comparative harm in deciding whether to grant or deny an injunction as follows:

"Where substantial redress can be afforded by the payment of money, and issuance of an injunction would subject the defendant to grossly disproportionate hardship, equitable relief may be denied, although the wrongful acts are undisputable."

As previously noted herein, this same principle was resorted to in denying an injunction in *Muscoda Bridge Co. v. Worden-Allen Co., supra.* See also *Hogue v. Bowie* (Tex. Civ. App. 1918), 209 S. W. (2d) 807, in which case an injunction was denied with respect to a defendant city which was discharging effluent from a sewage-disposal plant into a creek flowing past plaintiff owner's land.

The trial judge in his memorandum opinion does not discuss the alternative of granting an injunction which would merely restrain the city from discharging raw sewage across plaintiffs' land in contrast to the all-inclusive one sought by plaintiffs which would prohibit effluent as well as sewage from being so precipitated.

In *Winchell v. Waukesha, supra,* the plaintiff sought an injunction to restrain the defendant city from discharging

its sewage into the Fox river at a point not far from plaintiff's lands, the odor from which caused great distress and discomfort in plaintiff's residence. The evidence disclosed that the sewage could be rendered "innoxious" and "inoffensive" by treatment in septic beds or tanks at a moderate cost to the city. The trial court entered an interlocutory judgment whereby the city was restrained "from discharging its sewage through its sewer system into the Fox river at any time after December 1, 1901." Such date was fixed far enough in the future so as to permit the city to have time to install the septic beds or tanks. On appeal, this court was fearful that the language used in the injunction portion of the judgment was ambiguous, and modified the same so as to add thereto the following (p. 112):

"Unless the same [the sewage] shall have first been so deodorized and purified as not to contain foul, offensive, or noxious matter capable of injuring the plaintiff or her property or causing nuisance thereto."

We are of the opinion that the plaintiffs are entitled to a permanent injunction worded similarly to that granted in *Winchell v. Waukesha, supra,* as modified by the mandate on appeal in that case.

*By the Court.*—Judgment modified so as to add thereto the following: "It is further adjudged that the defendant city be, and it is, hereby permanently restrained and enjoined from hereafter precipitating on or across plaintiffs' lands any sewage which shall not first have been so deodorized and purified as not to contain foul or noxious matter capable of injuring plaintiffs' lands or causing a nuisance thereto;" and, as so modified, is affirmed.