Witzel and wife, Respondents, v. Madison Metropolitan Sewerage District, Appellant.

*September 7—November 21, 1958.*
*[Mandate filed October 7, 1958.]*

For the appellant there was a brief by *Schubring, Ryan, Petersen & Sutherland* of Madison, and oral argument by *R. J. Sutherland.*

For the respondents there was a brief by *Albert H. Gill* of Evansville, and *Geffs, Geffs, Block & Geffs* of Janesville, and oral argument by *Mr. Gill* and *Mr. Jacob Geffs.*

BROWN, J.    Some historical perspective may be useful:

The committee on water pollution is a public agency created under sec. 144.52, Stats., with powers and duties prescribed by statute.  For brevity hereinafter we will call it the "committee."  Discharge of sewage is processed by Madison

Metropolitan Sewerage District, which is a quasi-public or quasi-municipal corporation. We will refer to it as the "district." The district operates sewage-disposal plants called the Burke plant and the Nine Springs plant. After such processing the effluent is discharged from the plants into various small lakes south of the city of Madison. The committee found offensive pollution in such lakes resulting from such sewage so discharged and it ordered the district to submit final plans for eliminating any discharge of effluent into any such lakes.

The district, joined by the city of Madison, Dane county, and an individual taxpayer, opposed the order of the committee for numerous reasons but the circuit court for Dane county, ARTHUR W. KOPP, judge presiding, sustained the committee's order and, on appeal, was affirmed by the supreme court. *Madison Metropolitan Sewerage Dist. v. Committee* (1951), 260 Wis. 229, 50 N. W. (2d) 424.

Thereupon the district formed and submitted to the committee plans to pass the effluent of the Nine Springs plant into Badfish creek and thence into the Yahara river thereby avoiding the lakes. Several of the property owners on Badfish creek and the Yahara river brought proceedings before the committee protesting the plan of the district. Hearings were held by the committee after which the committee dismissed the property owners' petition. In effect, the committee approved the Badfish creek project and this was sustained on review by the circuit court for Dane county, RONOLD A. DRECHSLER, judge presiding. That judgment was then sustained on appeal in *Stearns v. State Committee on Water Pollution* (1956), 274 Wis. 101, 79 N. W. (2d) 241. The case also determined that sec. 144.05 (2), Stats., confirms the right to damages by the owner of property taken for such purpose but this section applies only to damages resulting from the acquisition of the right of way attendant upon property taken for ditches, drains, etc., in the construction

of the system. In addition to such acquisitions, the effluent passing through Badfish creek may in some conditions actually constitute a taking of property of riparian owners. Under the *Stearns Case, supra,* a present right to an owner for compensation is not created by a plan to pass effluent down Badfish creek. If and when the owner's property is invaded by the effluent then the extent thereof may be proved and the damage ascertained. An *expectation* of some prospective damage, the magnitude of the invasion from this cause, and the amount of compensation may not rest on speculation.

When the cases of *Madison Metropolitan Sewerage Dist. v. Committee, supra,* and *Stearns v. State Committee on Water Pollution, supra,* had established the district's obligation and right to proceed with the Badfish creek project, the district planned to improve, widen, and deepen the Badfish channel for the better passage of effluent. To accomplish these purposes the district sought to obtain about 1.1 acres belonging to Mr. and Mrs. Witzel along the course of the stream. The district was unable to purchase this part of the Witzel property and began condemnation against the 1.1 acres so described. In the condemnation process the commissioners set the value of $8,500 for the Witzel property. The district deemed it inadvisable to proceed at that price and discontinued condemnation proceedings, by authority of sec. 32.19, Stats., reading as follows:

"If any person instituting condemnation proceedings, shall deem it inadvisable to take the real estate at the price fixed by the commissioners or by a jury upon appeal, it may, within sixty days after filing the award of the commissioners or within sixty days after assessment of damages by the jury, discontinue the proceedings upon such terms as to the court shall seem just."

The circuit court set terms of discontinuance as follows:

(1) (a) That the district refrain from diverting any sewage effluent through the Witzel land by means of Badfish

creek unless it first tender to the Witzels the sum of $8,500 or submit to judgment in such amount.

(1) (b) That the district pay to the Witzels, or their counsel, attorneys' fees and disbursements in the total sum of $778.70.

The appellant district advances the following two contentions with respect to the terms imposed by the trial court, as a condition to the discontinuance of the condemnation proceeding:

(1) The terms authorized to be imposed by sec. 32.19, Stats., only embrace those reimbursements which are necessary to restore the property owners to their *status quo* prior to the institution of the condemnation proceeding.

(2) It was error for the trial court to include in the amount of attorneys' fees and disbursements, which the district was ordered to pay to the property owners, any compensation for the services rendered by the property owners' counsel in opposing the motion to discontinue the condemnation proceeding.

The court's terms require the district to pay for no-condemnation the same amount which the commissioners charged the district for condemning all it asked for.

Counsel for the Witzels seek to justify such part of the order as restrains the district from discharging effluent into Badfish creek so as to flow through the Witzels' land, on the ground that the district is acting in bad faith in moving for abandonment of the proceeding when in fact it intends to proceed with the taking. In support of such position counsel cite *Robertson v. Hartenbower* (1903), 120 Iowa, 410, 94 N. W. 858.

In *Robertson v. Hartenbower, supra,* a city abandoned a condemnation proceeding pursuant to statute and thereafter instituted a second proceeding to acquire the same property. The Iowa court held that the statute permitting the abandonment contemplates an abandonment in good faith, and, if the

abandonment is in bad faith in order to get the damages determined in a second proceeding, the award made in the first proceeding is binding upon the condemnor.

We do not consider that the rule of the *Robertson v. Hartenbower Case, supra,* has any application to the instant appeal. If, as a result of the future discharge of effluent by the district into Badfish creek, the Witzels should sustain damage and should bring an action to recover the same, or for inverse condemnation, there might arise a situation where the doctrine of such case would control. We express no opinion on that point here.

In the *Stearns Case, supra,* we had affirmed the committee's decision to run effluent through Badfish creek. We held there that damages do not accrue to riparian owners until and unless the effluent actually encroaches upon their lands or otherwise invades legally protected rights. Before the district began condemnation of Witzels' land there was no taking and the district owed them nothing. When it dropped the condemnation proceeding the situation reverted to that which prevailed before condemnation had been begun.

We regard the situation similar to that in *Brown v. County State Road & Bridge Committee* (1924), 182 Wis. 480, 196 N. W. 860, where condemnation proceedings had been discontinued after they had been begun. The court there was concerned only with allowance of attorneys' fees but the rule concerning terms presently applicable is correctly stated in the *Brown Case, supra,* at pages 482 and 483, as follows:

"The property of the appellants was not taken, and they were not deprived of their property in any way. The statute, as we construe it, contemplates that the appellants should not be legally injured in their property rights, but that they should be made whole in their reasonable and necessary disbursements incurred in a defense of the proceedings, as a condition of abandonment. . . .

"The court should therefore have allowed, in its order dismissing the proceedings, a reasonable sum for attorneys' fees

as would leave the landowners in their property rights as they were before the commencement of the proceedings."

The trial court may not in the guise of terms, really grant damages for such prospective flowage of effluent contrary to the rule of the *Stearns Case, supra.*

We deem the case of *Krutz v. Dodge* (1911), 66 Wash. 178, 119 Pac. 188, 28 Ann. Cas. 869, to be in point on the meaning of the word "terms" in sec. 32.19, Stats. In that case the plaintiff property owner made application to the court to register title to a parcel of land under the Washington Torrens Law statute. Certain defendants intervened and opposed such application as to a 10-foot strip. The statute permitted the applicant to withdraw the proceeding upon *"terms"* fixed by the court. The court denied such motion but dismissed the application "with prejudice" and adjudicated that the 10-foot strip was a public alley. The Washington supreme court reversed and declared (66 Wash. at p. 183, 119 Pac. at p. 190):

"This word ['terms'] has a meaning which is generally accepted when used in connection with judgments and judicial proceedings. It is that the court may impose such penalty *as will save the opposing party harmless from pecuniary loss,* and which can be satisfied by the payment of a fixed sum of money." (Emphasis supplied.)

We add that under certain circumstances a court may find it appropriate to impose physical restoration of properties or the like and we do not intend that a court be limited to impose terms except for pecuniary performance.

The provision in the order of the trial court, which restrains the district from discharging effluent through the Witzels' land by means of the Badfish creek unless the district pays them the sum of $8,500, goes beyond anything that is necessary in order to restore the Witzels to their status prior to the institution of the condemnation proceed-

ing. Therefore such provisions clearly exceed in scope the meaning of the word "terms" in sec. 32.19, Stats.

There remains for consideration the second issue raised by the district, *i.e.,* that it was error to require the district to pay any attorneys' fees for Witzels' counsel for services rendered in opposing the motion of abandonment. Such opposition was undertaken by counsel in order to secure those terms which counsel in good faith deemed necessary to protect their clients' interests. We consider it was proper to include such item in the amount the district was required to pay as terms for the abandonment.

*By the Court.*—Paragraph 1 (b) of the order appealed from is affirmed. Paragraph 1 (a) is reversed. The appellant to have costs.

MARTIN, C. J., took no part.