CHRISLAW and others, Appellants, v. VILLAGE OF CLIN-
TON, Respondent.

*January 3—February 1, 1966.*

550

For the appellants there was a brief by *Wickhem, Consigny & Sedor* of Janesville, and oral argument by *Gilbert D. Sedor.*

For the respondent there was a brief by *Geffs, Geffs, Block & Geffs* of Janesville, and oral argument by *Jacob Geffs.*

WILKIE, J. Two issues are presented on this appeal:

First, did respondent acquire a right-of-way to discharge effluent over appellants' land and, if so, what is the extent of that right-of-way?

Second, did the flow of effluent constitute a nuisance?

*Right-of-Way.*

The trial court determined that respondent has acquired "use of the surface drain as well as the under-

ground tile drain as a right-of-way" under sec. 144.05 (2), Stats. This section provides:

"The city or village or the owner of land through which the drain is constructed may apply to the circuit court of the county in which the land is located to determine the damages, if any. No injunction against the use shall be granted until the damages are finally determined and payment refused. Unless within six months after the system is completed the owner of the land shall institute such proceedings he shall be barred. The proceedings shall be according to chapter 32 of the statutes, so far as applicable."

Although appellants' brief is devoted exclusively to a discussion of the nuisance issue, appellants' counsel has indicated on oral argument that the trial court erred in his determination about respondent's right-of-way and appellants contend that the right-of-way was limited to an underground right-of-way over the tile.

This court has recognized that sec. 144.05 (2), Stats., would be applicable to "property . . . taken for ditches, drains, etc.," in the construction of sewage systems.[2] Since sub. (1) refers to a "drain constructed pursuant to law" and sub. (2) authorizes a landowner of "land through which the drain is constructed" to seek damages by way of inverse condemnation provided he institutes his action therefor within six months after the "system is completed," it might be argued that the legislature intended sec. 144.05 to be applicable only where a constructed drainage system exists and not to cases like the present, where the effluent flows freely onto the land surface. Put another way, it could be said that only situations where sewage is discharged into preexisting drains or ditches or into drains or ditches specifically developed for the purpose are covered by

[2] *Stearns v. State Committee on Water Pollution* (1956), 274 Wis. 101, 106, 79 N. W. (2d) 241. See also *Witzel v. Madison Metropolitan Sewerage Dist.* (1958), 5 Wis. (2d) 443, 445, 93 N. W. (2d) 174.

the statute, and that instances where the waste is just dumped over the land are not within its purview.

But there is little difference between the municipality digging a ditch and letting the waste drain (which would clearly be within the scope of sec. 144.05, Stats.) or allowing the discharge to carve out its own canal.

In *Witzel*[3] a plan had been approved to run effluent from the Madison Metropolitan Sewerage District through Badfish creek for eventual discharge into the Rock river. The court ruled that if, as a result of the future discharge of effluent by the district into the creek, the Witzels (adjoining riparian landowners) should sustain damage by reason of a taking of additional land, the Witzels would then have rights of inverse condemnation under sec. 144.05, Stats.[4]

Furthermore, a holding that sec. 144.05, Stats., does not apply to a ground-drain situation could result in questionable legality of parts of the systems of discharge of treated sewage established by many municipalities which undoubtedly employ this technique as part of those systems.[5]

## Nuisance.

The trial court found that the effluent did not constitute a nuisance in regard to noxious odors. (This finding is not contested here.)

The trial court also failed to find a nuisance created by the village caused by the amount of effluent poured into the right-of-way and overflowing onto the Chrislaw farmland.

It is settled that:

" 'A municipality is answerable in damages if it discharges the outflow of a sewer, or a system of sewerage

---

[3] *Witzel v. Madison Metropolitan Sewerage Dist., supra,* footnote 2.

[4] Id. at page 446.

[5] See for example *Briggson v. Viroqua* (1953), 264 Wis. 47, 58 N. W. (2d) 546.

upon the property of another, and this upon the ground that such discharge constitutes a private nuisance for which action may be maintained by the person injured. . . .' " [6]

In this respect there is a private nuisance during the period when the excess effluent is temporarily sufficient to exceed the amount of effluent normally carried by the right-of-way and the excess causes temporary damage to the surrounding land and before the invasion of the land is more than temporary so that the additional land of the adjoining property owner is in reality taken for the drain with the consequent right of inverse condemnation arising in that property owner under sec. 144.05, Stats.

The evidence fully supports the trial court's finding that the use made in discharging effluent into the right-of-way, as found by the court, had always been within the bounds of that right-of-way. There was a time, soon after 1958, when the present swath was cut through the Chrislaws' land and the taking of land that accompanied the expanded use of the drain gave rise to a claim by the Chrislaws for inverse condemnation under sec. 144.05, Stats. But the Chrislaws sought no relief under the statute and can have no other relief except if there is a nuisance notwithstanding the right-of-way.

Thus, no nuisance was established.

On the issue of damages, appellants did introduce evidence demonstrating the loss they sustained by being unable to plant corn on the land in question and also the diminution of the value of the land as such. A suit against the Scherer company, which had also discharged waste onto appellants' property through the railroad ditch commencing in 1958, was settled for an undisclosed amount. Under the rule of *Mitchell Realty Co. v. West*

---

[6] *Briggson v. Viroqua, supra,* footnote 5, at page 53, quoting 18 McQuillin, Mun. Corp. (3d ed.), p. 507, sec. 53.129 (now 3d ed. rev.), at page 492.

*Allis,*[7] that one of two or more contributors to a nuisance cannot be held liable as a joint tort-feasor, but only for its share of damages, appellants cannot succeed on their damage claim. This is because they failed to prove how much of the damages, if any, was attributable to the respondent.

There may come a time when the amount of effluent discharged into the right-of-way will be enough to overflow and cause some temporary further damage to the Chrislaw land. If so, the Chrislaws will have an action for nuisance. If this overflow is sufficient so that the channel cut through the Chrislaw land is more than the channel found in the instant case there will be a taking of Chrislaw land so as to give rise to a cause of action for inverse condemnation under sec. 144.05, Stats. To minimize these possibilities the village should take steps to repair the tile drain and to improve the efficiency of the flow of effluent through the right-of-way.

Else, it appears that this controversy, much like *Jarndyce v. Jarndyce,*[8] in Charles Dickens' *Bleak House,* may well wend its way into the courts again.

*By the Court.*—Judgment affirmed.

HALLOWS, J. (*dissenting in part*). I dissent to the part of the opinion which holds the respondent has acquired under sec. 144.05 (2), Stats., a right-of-way to the use of the surface of the appellants' land. That section does not contemplate, nor should it, that a municipality by its wrongful acts, acts which would otherwise constitute a nuisance, should acquire a right-of-way over the surface of a private owner's land. The statute con-

---

[7] (1924), 184 Wis. 352, 199 N. W. 390.

[8] "Jarndyce and Jarndyce still drags its dreary length before the Court, perennially hopeless." Charles Dickens, *Bleak House,* ch. 1.

templates that a drain is constructed through private property. The majority sees little difference between digging a ditch, letting the waste drain or allowing the discharge to carve out its own canal; that may be so, but the statute still calls for the construction of a drain. And, such construction would prevent the discharge from overflowing the land or from carving out its own canal. The present overflow is caused primarily because of the failure of the village to repair the drain tile through which it has a right-of-way. To let the effects of such wrongful acts constitute the creation of a right-of-way under sec. 144.05 (2) is to misread the statute and to sanction an injustice.