GIPSON LUMBER COMPANY and another, Respondents, v. SCHICKLING and wife, Principal Defendants: FARMERS MUTUAL INSURANCE COMPANY, Garnishee Defendant and Appellant.

*No. 171. Argued October 3, 1972.—Decided October 31, 1972.* (Also reported in 201 N. W. 2d 500.)

For the appellant there was a brief by *Lawrence P. Gherty*, attorney, and *William J. Radosevich* of counsel, both of Hudson, and oral argument by *Mr. Gherty*.

For the respondents there was a brief by *Gavic, Richardson & Skow* of Spring Valley and oral argument by *Robert J. Richardson.*

HALLOWS, C. J.   Several issues are raised, but since we believe this case should be reversed in the interest of justice, that is the only issue which will be discussed at any length. The action was commenced on May 15,

1963, by service of a garnishee summons and complaint by Gipson Lumber Company (Gipson Lumber) and William Pechacek, the respondents, upon the Farmers Mutual Insurance Company (Farmers Mutual), the appellant, claiming the insurance company had in its possession money owing to the principal defendants, Gilbert Schickling and Willa Lee Schickling, who had suffered a fire loss while they were insureds of Farmers Mutual. Like *Jarndyce v. Jarndyce,* this case "drags its dreary length before the court, perennially hopeless." Charles Dickens, *Bleak House,* ch. 1.[1] Finally on August 20, 1970, the trial was had after three judges and various lawyers had been in and out of the case.

The facts are comparatively simple. On June 20, 1959, a dwelling in Prescott, Wisconsin, owned by Gilbert Schickling and Willa Lee Schickling, was damaged by fire. At that time the dwelling was encumbered by a mortgage to the River Falls Savings & Loan Association in excess of $5,000. The dwelling was the subject of a policy of fire insurance issued by Farmers Mutual containing a loss-payable clause which required payment of any loss to the mortgagee to the extent of the mortgagee's interest. There was a delay in adjusting this fire loss claim and making proofs of claim, and eventually a suit was commenced in the state of Minnesota to recover on the policy. While this suit was pending and on May 10, 1963, Gipson Lumber recovered a judgment against the Schicklings in the principal amount of $1,051.40 and William Pechacek recovered a judgment for $3,312.12. Five days later Gipson Lumber and Pechacek commenced this garnishment action, erroneously alleging the fire occurred on February 21, 1961, and erroneously alleging the fire insurance policy's num-

---

[1] For a somewhat similar case, *see Chrislaw v. Clinton* (1966), 29 Wis. 2d 549, 139 N. W. 2d 568.

ber. Before the answer was due, Farmers Mutual issued a draft dated May 20, 1963, in the amount of $2,500 payable to the Schicklings, their attorneys, and the River Falls Savings & Loan Association in settlement of the fire loss claim, and on June 23, 1963, the suit commenced by the Schicklings in Minnesota was dismissed.

On June 14, 1963, after the payment to the Schicklings, the attorneys for Farmers Mutual wrote a letter to the attorneys for Gipson Lumber and Pechacek informing them of the error in the complaint and of the settlement and asking the plaintiffs to withdraw the garnishment action, which they refused to do. A motion by the plaintiffs for a default judgment was later denied and the belated answer of Farmers Mutual allowed and a notice of trial was filed in October of 1963. While the case was awaiting trial on December 16, 1963, the plaintiffs served upon Irving J. Mauer, an officer of Farmers Mutual, a subpoena duces tecum, ordering him to appear for an adverse examination and to bring all the policies issued to the Schicklings since January 1, 1960, and all index or ledger cards used by Farmers Mutual bearing the name of Gilbert Schickling and Willa Lee Schickling pertaining to losses claimed by them. It is to be noted that the fire loss suffered by the Schicklings occurred on June 20, 1959, and the date of January 1, 1960, after which fire policies issued were to be produced under the subpoena duces tecum, is alleged to be confusing. At the hearing on December 19, 1963, Mr. Mauer did not bring the items listed in the subpoena duces tecum upon advice of his counsel although he testified he could have found the files and the index cards. He testified he did not personally know whether his company had in its possession money owing to the Schicklings as of the date of the garnishee complaint.

The next activity in the case occurred when Farmers Mutual obtained an order on April 19, 1965, allowing it

to amend its answer to point out the error in the complaint and that Schicklings' suit was not brought within a year of the date of the fire. The record reflects a motion for summary judgment by Farmers Mutual on October 15, 1965, and an affidavit by the attorney for the plaintiffs in opposition, stating the motion was not timely made. The record is silent on the disposition of this motion. Nothing more seems to have been done until the case finally came on for trial on August 20, 1970, almost seven years after its commencement. At the beginning of the trial, many of the facts concerning coverage of the insurance policy and the fire were stipulated. Mr. Mauer's deposition was read into evidence and then counsel for the plaintiffs moved to strike all the pleadings of Farmers Mutual and for judgment for the full amount owing the plaintiffs on the ground Farmers Mutual had violated sec. 885.11 (5) of the statutes. The motion was granted and the entry of judgment followed.

We are at a loss to know why plaintiffs' counsel waited almost seven years before moving at the trial on the merits to strike the pleadings under sec. 885.11 (5), Stats. The section provides if any party to an action unlawfully refuses or neglects to appear or testify or depose therein, the court may "strike out his pleading, and give judgment against him as upon default or failure of proof." In this case Mr. Mauer did appear and testify. Perhaps his answers were not entirely satisfactory but that is frequently true in an adverse examination. The answers frequently depend upon the form of the question. It has been said, "It is the question that fetches the answer."

While sec. 885.11 (5), Stats., does not specifically refer to a refusal to produce documents under subpoena duces tecum, which seems to be the main ground upon which the trial court struck the answer, nevertheless, we consider the section to be broad enough to embrace the failure to obey such a subpoena used with a discovery

examination. The record does not disclose why the insurance company's attorney advised its officer not to bring the documents requested in the subpoena although technically it did not call for the policy in existence at the time of the fire. The insurance company should not have taken advantage of that fact and should not have played its cards so close to its vest. At the time of the trial it did disclose the insurance policy and the other material information upon which the case could have been disposed of on its merits.

The constitutionality of statutes similar to sec. 885.11 (5), Stats., has been considered and upheld providing the court exercising the power remains within the bounds of due process of law. Three major cases have laid down guidelines.[2] These cases were reviewed in *Hauer v. Christon* (1969), 43 Wis. 2d 147, 168 N. W. 2d 81, and the teaching is that a judge may strike an answer for noncompliance within the bounds of due process when the evidence withheld relates to an essential element of the defense so as to warrant a presumption of lack of merit and the disobedience is not the result of an inability on the part of the defendant to perform. Whether the evidence withheld must relate to all defenses raised is a question. At least one court has held that if the evidence relates to only one of a number of defenses, the presumption will be raised as to that defense only. *See: Feingold v. Walworth Brothers, Inc.* (1924), 238 N. Y. 446, 144 N. E. 675. Here, however, all defenses related to the policy withheld.

Farmers Mutual contends that before sec. 885.11 (5), Stats., can be applied, it must be shown at a hearing that the person unlawfully refuses or neglects to appear or testify or depose and that in this case the issue of un-

[2] *Societe Internationale v. Rogers* (1958), 357 U. S. 197, 78 Sup. Ct. 1087, 2 L. Ed. 2d 1255; *Hammond Packing Co. v. Arkansas* (1909), 212 U. S. 322, 29 Sup. Ct. 370, 53 L. Ed. 530; *Hovey v. Elliott* (1897), 167 U. S. 409, 17 Sup. Ct. 841, 42 L. Ed. 215.

lawfulness was not determined; we agree. Although the adverse shows ability to produce, no hearing on the question of unlawful refusal was held. We read "unlawfully" in this statute, not to mean illegal but rather to mean without an excuse recognized by law. Consequently, inability would be a defense, whereas wilfulness, bad faith, or any other default of the petitioner would not. In December of 1963 Farmers Mutual had no more reason to conceal its records than it did on the date of the trial when it stipulated to the facts. It may be a motion by the plaintiffs at the time of noncompliance should and would have been granted after hearing, but this court cannot overlook the inaction on the part of the plaintiffs for almost seven years and the stipulation of facts. The plaintiffs should have moved promptly to strike the pleadings if they were relying upon sec. 885.11 (5) and not wait until trial and after the facts were stipulated to make the surprise motion. Where the information withheld is voluntarily given later and before trial, it is at least questionable that the presumption of the lack of merit is warranted. We do not agree the plaintiffs were prejudiced by Farmers Mutual's action and a pleading should not be stricken as a penalty for contempt. This is not a case where striking the answer and granting the judgment can be justified under the inherent power of the court "to maintain the orderly administration of justice and the dispatch of its business." *See Hauer v. Christon, supra.*

We conclude the plaintiffs were not entitled on the facts to invoke sec. 885.11 (5), Stats., when they did and the granting of the judgment bore no reasonable relationship at that time to the merits of the case. This case should be promptly tried on the merits. By "promptly," we mean within the next sixty days, and if the present circuit judge's trial calendar is not such that he can

hear the case, he should ask for an assignment of an outside judge.

*By the Court.*—The judgment is reversed with directions to the circuit court to hear this case forthwith but in any event no later than sixty days. If the circuit judge is unable to fit the trial of this case into his trial calendar, he is to request the assignment of an outside judge to hear the matter.